STATE OF NORTH CAROLINA v. IKE PHILLIPS

No. 6916SC359

(Filed 23 July 1969)

1. Criminal Law § 169— appeal and error — exclusion of testimony

The exclusion of testimony cannot be held prejudicial when the record fails to show what the answer of the witness would have been had he been permitted to testify.

2. Criminal Law §§ 99, 170— comment by trial court — prejudice to defendant

Defendant was not prejudiced by trial court's comment, during discussion between defense counsel and the Solicitor as to the identity of a picture, that the witness had previously identified the picture as a photo of defendant's car.

3. Criminal Law § 162— objection sustained to witness' answer — failure to instruct jury to disregard answer

Where the trial court sustained defendant's objection to the answer of a witness, failure of the court to instruct the jury not to consider the witness' answer is not error absent a request for such instruction.

4. Assault and Battery § 15— nonsuit as to felonious assault — assault with deadly weapon submitted — instructions as to difference between the crimes

In this prosecution upon bill of indictment charging defendant with felonious assault wherein the court allowed defendant's motion for non-

·suit of such charge and submitted the case to the jury upon the lesser charge of assault with a deadly weapon, it was not incumbent upon the trial judge to instruct the jury as to the difference between felonious assault and assault with a deadly weapon and that the felonious assault charge had been dismissed.

**5. Criminal Law §§ 114, 170——    instructions — expression of opinion by court**

In this prosecution for kidnapping and assault with a deadly weapon, references in the court's instructions to "the importance of this case", and "a case as serious and important as this," when considered in context, *are held* not to constitute an expression of opinion on the evidence.

**6. Criminal Law § 113——    instructions on defense of alibi**

In prosecution for kidnapping and assault with a deadly weapon, the evidence of defendant having raised the defense of alibi, charge of the trial court *is held* to have properly instructed the jury on the law of alibi and to have applied the law to defendant's evidence with sufficient particularity for the jury to have obtained a clear understanding of its significance.

APPEAL by defendant from *Ragsdale, S.J.,* February 1969 Regular Session, ROBESON County Superior Court.

Defendant was charged in proper bills of indictment, the first one charging him with a felonious assault of Billy Landis Meares on 5 January 1969, and the second bill of indictment charging him with the felony of kidnapping Billy Landis Meares on 5 January 1969.

The two bills of indictment were consolidated for the purpose of trial. The defendant entered a plea of not guilty to each charge. At the close of all of the evidence, the court sustained a motion to dismiss the charge of a felonious assault, and the case was submitted to the jury on the lesser assault charge, namely, an assault with a deadly weapon and the charge of kidnapping. The jury returned a verdict of guilty as to each offense. The cases were consolidated for judgment. The court entered a judgment in the consolidated cases that the defendant be imprisoned in the State's prison for a term of twenty (20) years.

From this judgment the defendant appealed to this court.

The evidence on behalf of the State tended to show that on the evening of 5 January 1969, Meares, a nineteen-year-old boy who lives in Fair Bluff, North Carolina, drove his automobile to Fairmont to the home of Betty Butler. Meares and Betty Butler then drove some 10 or 15 miles to a place known as "Theo's" located in South Carolina between Lake View and Dillon. They went there to pick up a girl friend of Betty Butler's. On arriving at Theo's Betty

Butler pointed out the defendant to Meares and likewise pointed out the defendant's automobile to Meares. Meares did not know the defendant. Betty Butler did know the defendant and previously had had dates with the defendant. Meares on this occasion had with him a one-half pint bottle of whiskey which was not full. While at Theo's, Meares, Betty Butler and a girl friend of Betty Butler's drank some of the whiskey from the bottle. Meares and Betty Butler remained at Theo's for some two or three hours and then returned to the home of Betty Butler in Fairmont. They left Theo's about 10:30 p.m. and arrived at Betty Butler's home in Fairmont about 10:50 p.m. They sat outside Betty Butler's home in Fairmont in Meares' automobile for some 10 or 15 minutes, and during this time, the automobile of the defendant drove by about four times.

Meares left Betty Butler's home to return to his own home in Fair Bluff. Meares was going on Highway No. 41. When he reached Ashpole Swamp on that highway, an automobile which had been following him pulled up alongside his car and forced Meares' automobile off the road by coming in contact with the left front fender of Meares' car. The other automobile was the defendant's automobile. The defendant and two other boys got out of the defendant's automobile and came back to Meares' car. Meares got out of his automobile when he saw the defendant coming towards him. The defendant had a pistol and threatened to kill Meares. The defendant and his two companions then proceeded to whip Meares. They took turnabouts striking Meares while two would hold him. They not only whipped Meares with their hands and fists, but they kicked him with their feet, and they struck him with the butt of the pistol. During the beating the defendant fired the pistol several times into the ground in front of Meares and at the time threatening to kill him. In the words of Meares:

". . . This went on for at least ten minutes. As it was going on Ike Phillips kept saying 'You went to the wrong place tonight, boy.' And he said 'You are not coming back to Fairmont, are you?' And he said 'Are you dating Betty anymore?' And said that they hated the Fair Bluff boys, and was going to do them the same way they did me if they could catch them."

After the beating the defendant ordered Meares at pistol point into the defendant's automobile, and the companions of the defendant likewise got into the automobile. They then drove to Fair Bluff which is in Columbus County and took him to the home of Archie Bullard. The defendant then ordered Meares out of the car

and to go into the Bullard home and show the Bullard boy what had been done to him and to tell the Bullard boy that he was going to get the same thing.

As a result of the beating in the words of Meares:

"I went to the hospital. My face was bruised all over; both eyes hemorrhaged; and bone under my eye broken. My nose was broken, and my right ear was torn so badly that it had to be sewn up — two stitches I believe."

The defendant did not testify in his own behalf but offered evidence tending to show that while he had been at Theo's Place on Sunday night, 5 January 1969, he left there a few minutes before 11:00 o'clock and went to Dillon, South Carolina, where he remained until about midnight and then went to Rowland where he stayed until about 1:30. The defendant took his friend and witness, J. L. Williams, home about 1:30, and that was the last time that evening that his friend and witness, J. L. Williams, saw him. The witnesses for the defendant accounted for the defendant's presence from 8:30 p.m. until about 1:30 a.m., and at no time during this interval was the defendant in Fairmont or on Highway 41 between Fairmont and Fair Bluff.

· *Attorney General Robert Morgan by Assistant Attorney General Bernard A. Harrell for the State.*

*Musselwhite & Musselwhite by W. E. Musselwhite and J. H. Barrington, Jr., for defendant appellant.*

CAMPBELL, J.

The defendant took some sixteen exceptions during the course of the trial and assigned each one in his assignments of error. Many of these exceptions, however, were expressly abandoned in the brief.

**[1]** The first exception is to the sustaining of an objection by the State to a question asked the witness Betty Butler on cross-examination. The record does not show what the answer to the question would have been, and therefore, we cannot tell whether the defendant was prejudiced.

This exception is without merit.

**[2]** The second exception assigned by the defendant as error was to the effect that the court, during a discussion between defense counsel and the Solicitor on behalf of the State with regard to the identity of a picture stated:

"Witness has previously identified this car as photo of Ike Phillips' car."

The record does not disclose that this comment by the trial judge was in any way prejudicial to the defendant. The record further reveals that the defendant made no objection to this comment and took no exception. At any rate, the comment by the court was in no way prejudicial to the defendant and there is no merit in this exception.

[3]    The third exception brought forward by the defendant is the following:

"Q.  Mr. Oliver, is the automobile shown in this picture the same automobile you have seen Ike Phillips driving?

A.   One just like it, if it is not it.

OBJECTION & MOTION TO STRIKE BY THE DEFENDANT.

.  .  .

OBJECTION SUSTAINED."

The defendant now assigns as error the failure of the court specifically to instruct the jury in connection with the motion to strike.

After the objection had been sustained by the court, defense counsel did not request the court to instruct the jury not to consider the answer. Under the facts here presented, it was incumbent upon defense counsel to make the specific request to the court. There is no merit in this exception anyway because the question and answer were not prejudicial to the defendant so as to justify a new trial.

[4]    The fourth group of exceptions made by the defendant is to the effect that the trial judge failed to comply with G.S. 1-180, in that when the motion for nonsuit of the charge of felonious assault was sustained and the case submitted to the jury only on the charges of an assault with a deadly weapon, the misdemeanor charge, and on the charge of kidnapping, it was incumbent on the trial judge to go further and explain to the jury that the felonious assault charge had been dismissed. In the brief for the defendant it is stated:

"It is true that the court later correctly charged the jury as to the elements necessary to make out a case of assault with a deadly weapon . . . but at no point was the jury instructed as to the difference between the crimes of felonious assault and assault with a deadly weapon, nor that the felonious assault charge had been dismissed."

This is certainly a novel argument, but in law, there is no merit in it. The trial judge told the jury about the dismissal of other elements of the assault bill of indictment and that only the assault with a deadly weapon remained. It was not incumbent upon the trial judge to charge with regard to the law on something that was no longer before the jury. The statute only requires the court "to state only such evidence as is necessary to explain and apply the law to the facts in the case". *State v. Tyson*, 242 N.C. 574, 89 S.E. 2d 138. The court did this.

There is no merit in this exception.

[5]　The fifth group of exceptions is that the trial judge expressed an opinion when charging the jury. These exceptions are directed to the following two excerpts from the charge:

1. "I know by now, having sat here all the week, you must know what I mean when I say to you, in such a case defendant, who does so, is the beneficiary of a presumption of law and that presumption is one of innocence. Nonetheless, in spite of the fact that you may now be familiar with the importance of this case, causes me to instruct you about it again and specifically."

2. "I take it that you are bound to know and especially in a case as serious and as important as this, that it is not a question of sympathy for anybody and not a question of prejudice against anybody, and you must not permit any consideration of that kind to enter your minds or influence your thinking or judgment."

The first quotation above occurred in the beginning of the charge and followed this sentence:

"Now, to these charges, members of the jury, the defendant has come into court and through his counsel, has entered a plea of not guilty."

Immediately following the first quotation above to which exception has been taken, the trial judge went on to explain to the jury what is meant by "presumption of innocence". When taken in context, there is no expression of opinion by the trial judge of a prejudicial nature to the defendant.

The second excerpt from the charge to which exception has been taken as expressing an opinion, followed immediately after an instruction to the jury as follows:

"Members of the jury, in passing on the testimony of any wit-

ness for either side, you ought to take into consideration the intelligence which is manifested by these witnesses, while on the witness stand; the fairness or lack of fairness they demonstrated, if they do; the reasonableness or unreasonableness of their testimony, if any; their interest in the result of the action, or bias or prejudice, if any; their means of knowing the facts of which they have testified; and you should give in the final analysis to each witness such weight as to you he seems to be entitled. You may believe all of what any witness says, or disbelieve all that a witness has said; you may believe a part of what he says and disbelieve a part; or you may disbelieve altogether."

When taken in context, the portion of the charge to which exception is taken does not express any opinion of the trial judge prejudicial to the defendant.

There is no merit in this exception.

[6]    The sixth group of exceptions assigned as error by the defendant is that the trial court in the charge to the jury failed adequately to set forth and explain to the jury the defense of alibi relied upon by the defendant. The portion of the charge excepted to is as follows:

"Now, members of the jury, probably all of your lives you have heard use of the word, 'alibi.' The word, alibi, is a perfectly legitimate, proper and correct English word, which has a legal meaning. The word, alibi, means elsewhere. It is not, properly speaking, a defense within any accurate meaning of the word, defense, but it is a mere fact that may be used to call and question the identity of the person who is charged or the entire basis of the prosecution. The burden of proof, in proving an alibi, does not rest upon the defendant. The burden of proof never rests upon the defendant for any purpose in a criminal trial. And the burden of proof does not rest upon him to show his innocence or his whereabouts or disprove anything necessary to establish the crime with which he is charged.

A defendant's presence at or participation in the crime or crimes charges, [*sic*] are affirmative material facts and the State must show beyond a reasonable doubt those facts to sustain a conviction. For the defendant to say he was not there is not an affirmative proposition. It is a denial of the existence of a material fact in the case and, therefore, the defendant's evidence of an alibi is to be considered by you like any other evidence, wherein the defendant tries to refute or disprove the evidence

of the State, although the burden for doing that is not upon him, and if upon consideration of all of the evidence in the case, including the defendant's evidence in respect to an alibi, there arises in your minds a reasonable doubt as to his guilt, he should be acquitted."

The court fairly summarized the evidence offered by the defendant and fully and adequately set forth the contentions of the defendant all tending to establish that he was not present either in Fairmont or on Highway 41 between Fairmont and Fair Bluff at the time the assault and kidnapping occurred. The various witnesses offered by the defendant accounted for all of his time and his presence elsewhere during the period of the assault and the kidnapping.

The above charge with regard to alibi was adequate and complete under the facts of this case and nothing prejudicial to the defendant is shown. *State v. Lovedahl*, 2 N.C. App. 513, 163 S.E. 2d 413, (certiorari denied, 274 N.C. 518.)

The record in this case discloses that the defendant has been afforded a fair and an impartial trial free of error of law and that is all to which he is entitled. The jury found the facts to be contrary to those contended by the defendant.

No error.

BROCK and MORRIS, JJ., concur.