STATE OF NORTH CAROLINA v. RUSSELL EVERETT PERKINS

No. 7014SC211

(Filed 6 May 1970)

1. Criminal Law § 99— comments by trial court — expression of opinion

   In this incest prosecution, the trial court did not express an opinion on the evidence when, in response to a question by defense counsel as to whether defendant had sexual relations with his daughter, defendant answered, "Not to my knowledge," and the court asked, "You would know, wouldn't you?" and instructed defendant to "answer the question correctly."

**2. Criminal Law §§ 114, 170—    expression of opinion in instructions
— reference to "disagreeable case"**

In this incest prosecution, the trial court did not commit prejudicial
error in thanking the jury at the beginning of the instructions "for the
attention you have given to this rather disagreeable case."

**3. Criminal Law § 99—    comment by trial court — expression of opinion**

In this incest prosecution, defendant was not prejudiced when the court,
upon being informed by defense counsel that defendant wished to make
a statement, stated "That will not be permitted," and told the jury to
retire and that he would "see what this is about."

**4. Criminal Law §§ 99, 170;    Constitutional Law § 32—    defendant's
dissatisfaction with counsel — comments by trial court in absence
of jury**

In this incest prosecution, defendant was not prejudiced when, upon
being informed in the absence of the jury that defendant was not satisfied
with his appointed counsel, the trial court stated that defendant had ob-
jected to all three lawyers who had been appointed to represent him, that
defendant was not going to pick and choose lawyers to be paid by the
State, that the court had done the best it could in giving defendant a good
lawyer, and that "you will take him and you will like him."

**5. Criminal Law § 102—    solicitor's attempt to get evidence in record
— prejudice**

In this incest prosecution, defendant was not prejudiced by the solicitor's
attempts to get into evidence State's exhibits which were identified as
letters from defendant where the court sustained defense objections to
their introduction.

**6. Criminal Law § 34;    Incest—    evidence of other instances of inter-
course with prosecutrix**

In this incest prosecution, the trial court did not err in the admission
of testimony that defendant had had intercourse with the prosecutrix on
previous occasions and in referring to such testimony in the charge.

ON Certiorari to Review Judgment from *Bailey, J.,* 7 November
1967 Session of DURHAM County Superior Court.

Defendant Russell Everett Perkins (Perkins) was indicted during
the July 1967 term of Durham County Superior Court for having
felonious carnal intercourse with his daughter, Carolyn Perkins, age
14, on 26 June 1967. It was determined that Perkins was indigent
and counsel was provided for him. After Perkins became dissatisfied
with this attorney, another member of the Bar was provided for him.
After a misunderstanding and a conflict arose, the second attorney
was allowed to withdraw. Apparently, a third attorney was ap-
pointed for Perkins prior to the trial.

Perkins' daughter, Carolyn, testified that her mother and her
older sister had left the home, leaving Carolyn and her father to

care for the smaller children. She testified that her father called her to the bedroom while the younger children were watching television; that he closed the door, told her to remove her clothes and lie on the bed; that he then had sexual relations with her. She stated, over objection, that he had done this "six or seven times" before.

Carolyn Perkins testified that she reluctantly told her mother about the incident, after the latter had questioned her "because my little sister saw the door closed." Mrs. Perkins testified she had met her husband in Germany in 1951. Perkins returned to the United States and brought her over here and married her. She stated that she had one child, Linda, before meeting Perkins and that Carolyn had been born to her before their marriage, but that Carolyn was Perkins' child. Four other children were born of the marriage. Mrs. Perkins tended to corroborate Carolyn's testimony regarding the incident in question here.

Perkins took the stand and denied having relations with Carolyn. He testified that he had merely called her to the room to find some pants for him and to tell her to dress the children so they could all leave; and that there was no way the children could have seen the door to the bedroom closed from where they sat near the television. When asked whether Carolyn Perkins was his daughter, he replied,

"For all I know I would say yes, sir. I was dating my wife at the time steady. I was dating my wife — she had one. child. That is the reason I married her. I came back to the United States and thought I had left a little baby in Germany without a father.

Q   And how old is Carolyn Perkins, your daughter?

A   She is fifteen the 28th of this month."

Perkins admitted writing the letters which were the State's exhibits and stated that he had had drinking problems.

The jury returned a verdict of guilty and the defendant, Perkins, was sentenced to 15 years imprisonment by a judgment signed 7 November 1967. Perkins petitioned this Court for a writ of certiorari which was granted and filed 31 December 1969.

*Attorney General Robert Morgan, Deputy Attorney General Ralph Moody and Staff Attorney Donald M. Jacobs for the State.*

*W. Paul Pulley, Jr., for defendant appellant.*

CAMPBELL, J.

[1]    The major exception assigned is that the judge expressed an opinion to the jury about the case in the following colloquy:

"Q   Now, Mr. Perkins, you are accused of having had sex relations with your daughter on the 26th day of June, 1967. Now, did you have sex relations with your daughter?

A   Not to my knowledge, no, sir.

COURT:   You would know, wouldn't you?

A   Sir?

COURT:   You would know it, wouldn't you?

A   I would think I would know if I did.

COURT:   Answer the question correctly.

No, I did not have sex relations with my daughter on that date. . . ."

The defendant contends that the statement "answer . . . correctly," implies that the trial judge was saying that the defendant was not answering "truthfully." We do not feel that such is the implication; and under the circumstances, this statement by the trial judge was not prejudicial. First, he subsequently answered the question, "No." Secondly, the question was posed by defendant's own counsel and he should not now complain that he was asked to answer it. Defendant does not attack the statement on the basis that it was self-incriminating, but rather attacks the conduct of the trial judge. We do not find this to have been prejudicial error. See *State v. Hoyle,* 3 N.C. App. 109, 164 S.E. 2d 83 (1968).

[2-4]    Perkins asserts that if the above statement alone was not prejudicial, then that, plus the following two statements were:

1.                   *"CHARGE OF THE COURT*

BAILEY, J.:   Ladies and Gentlemen of the Jury, let me thank you first for the attention you have given to this rather disagreeable case and for the attention you have paid the evidence and to the lawyers in the case."

2.   "DEFENDANT PERKINS:   I want to make a statement.

MR. BURT:   May it please the Court, the defendant wishes to make a statement at this time.

COURT:   That will not be permitted. Ladies and gentlemen of the jury, I will ask you to go to your jury room. I will see what this is about.

THE JURY IS EXCUSED FROM THE COURTROOM AND OUT OF THE PRESENCE OF THE JURY THE FOLLOWING PROCEEDINGS WERE HAD:

\*   \*   \*   \*

"(Mr. Burt confers with the defendant.)

MR. BURT: May it please the Court, he wishes to make the statement that he is not satisfied with his defense in this case.

THE COURT: Mr. Perkins?

DEFENDANT PERKINS: Yes.

THE COURT: I want this in the record, Mrs. Tilley. You have had three lawyers assigned to you since you have been charged with this crime. I believe you have objected to all of them. I assigned you Mr. Burt because I believe and do believe now that he is one of the ablest lawyers at the Durham Bar. Now, I am not going to permit you to pick and choose lawyers to be paid by the State of North Carolina. I have done the best I can in giving you a good lawyer. I would be content to be represented by Mr. Burt myself. Now, you will take him and you will like him. You can sit down. You will bring the jury back."

We disagree. In the first instance, the court merely thanked the jury for their service in connection with a "disagreeable" type of case — not necessarily a "disagreeable" defendant. *State v. Phillips,* 5 N.C. App. 353, 168 S.E. 2d 704 (1969). In the second instance, the court did no more than indicate, within the hearing of the jury, that a certain procedure would be followed. The latter amounts to a judge's cautioning the defendant's attorney about the use of improper procedure, which is entirely within the province of the trial judge. Defendant's assignment of error regarding his objection to appointed counsel is without merit. *State v. Moore,* 6 N.C. App. 596, 170 S.E. 2d 568 (1969).

[5] Defendant also questions the propriety of allowing the Solicitor to "wave" letters before the jury after objections to their admission into evidence had been sustained. The record shows only that some letters were offered as State's exhibits after they were identified as letters from the defendant, and then the following occurred:

"Q   This is State's Exhibit 3; do you recognize that?

A   Yes, I do.

Q   What is that?

A   It is a letter I received from my husband through the mail.

Q   When did you receive that?

A   I received it in — on July 17, 1967.

Q   Is that letter and all of the parts thereof in your husband's handwriting?

A   Yes, they are all in my husband's handwriting (examining the letter).

A   I would like to introduce that into evidence, if your Honor please.

OBJECTION — SUSTAINED.

Q   Now, I would like to have this item identified as State's Exhibit 4 and ask this witness whether she recognizes State's Exhibit 4?

A   Yes, it is his handwriting. I received it through mail.

(Envelope containing letter postmarked Durham, July 5, 1967, is marked for identification as STATE'S EXHIBIT No. 4.)

COURT:   What did she say it was, letter received from the defendant on when?

A   July the 5th, 1967.

MR. EDWARDS:   I think I will have no further questions at this time. What I would like to do in State's Exhibit 4, which has been identified as being one of the letters that she received from the defendant, this one on July 5, 1967, I would like to tender that in evidence.

OBJECTION — SUSTAINED."

The Solicitor cannot be faulted for attempting to get evidence into the record. The defendant's objections were sustained and the record shows no prejudice to the defendant. *State v. Butler,* 269 N.C. 483, 153 S.E. 2d 70 (1967).

[6]   The following two dialogues are also complained of by the appellant (the first during Carolyn's and the second during Mrs. Perkins' testimony):

1.   "Q   Now, Carolyn, had he done this before to you?

A   Yes, sir.

STATE v. PERKINS

OBJECTION — OVERRULED.

Q How often, approximately?

A I don't know, but from what I remember it was six or seven.

Q About six or seven times?

A Or more.

Q When did he start doing this to you?

A About a year ago this summer.

Q About a year ago?

A Yes, sir."

2. "Q Did you ask her whether it had ever happened to her before?

A Yes, I questioned her about it.

Q What did she say?

A And she told me 'yes,' and she told me exactly she couldn't remember how long it has been going on, and I asked her again, I said, 'Carolyn, how come you haven't told me about it?' and all she gives me for an answer is because he has threatened her."

All of this was referred to in the charge of the Judge in the following manner:

"She testified this had happened some six or seven times before over a period of a year; that she had not made any complaint to anyone before because her father had told her that if she did that she would have to go to the penitentiary; that, when her mother came home that afternoon, she reported this to her mother only after her mother had questioned her about it two separate times."

This assignment of error is without merit. *State v. Sutton*, 4 N.C. App. 664, 167 S.E. 2d 499 (1969).

We have reviewed the other assignments of error as well and find, in law,

No error.

PARKER and HEDRICK, JJ., concur.